...argument in our second paper for 17-12-14, Legacy v. Cadrillion, as soon as the lawyers are ready. What's going on? We have another case. Two more, actually. Thank you. Good morning, Your Honors. Thank you for allowing me to come here today, and I apologize for greeting my fellow South Carolinian a little loud. To me, the central question on this appeal is whether a party can be held liable for converting its own money by failing to pay the purchase price under a contract. And that's exactly what happened here. If you look at the facts and boil this case down to its core and you assume that everything that the plaintiff says is true, here's what happened. Cadrillion exercised the call option in the APA and created an enforceable contract for sale where Cadrillion purchased or became obligated to purchase LDA Georgia's rights to the deferred purchase price in exchange for the call price. So what we're talking about is a contract for sale where Cadrillion is the buyer, LDA Georgia is the seller, the item to be bought is the rights to the deferred purchase price, and the purchase price is the call price. Again, assuming that what plaintiffs say is true, Cadrillion exercised the call option. It calculated the call price to be $460,406. It admitted that it owed payment of at least that amount and refused to pay. That's the plaintiff's case. At its core. I'm sorry. I thought the plaintiffs were saying it's not just that they refused to pay it. It's that they took the money that they were conceding belong to the plaintiffs and tried to deposit it with the court so that they would have to litigate to get it. Isn't that the crux of their argument? That is certainly what they're saying. And what I'm saying to understand where this case is, this is an option contract where there's an enforceable contract for sale. And I'm saying that it is the law that a purchaser in a contract for sale, there is no authority finding that someone can be held liable for conversion for failing to pay a purchase price. If I refuse to pay mortgage on my house, I write the check, I hold it out, and I say this is my mortgage payment, but I'm not paying you, and I rip it up. It doesn't mean I've converted my own money. It means the mortgage company can sue me. But let's get into you asked about the first litigation. I think that's what makes this case. Well, it just seems like that's what the district court relied on. This was a conversion action, so we should probably. Okay. Under North Carolina law, in order to exercise an option, the optionee has to do exactly what the option says. And so what that means is if the option requires notice only, then you just give notice and you've exercised the option and created an enforceable contract for sale. If the option requires notice and payment of the purchase price, and that's the way Cadrillion interpreted this, then in order to create an enforceable contract for sale, you have to do both. And so Cadrillion interpreted the option to call for notice and payment, and they wanted to exercise the call option. They had given notice. Time was running out. Can I just ask you about the contract? I mean, is the jury entitled to find that that interpretation was wrong and, in fact, this property had already vested in the other guys? I'm sorry. I mean, I understand you're saying your client construed the contract one way. The jury found the other way. Right. The jury found that it was notice only. Right. And we have not appealed that finding. Why are we talking about this contrary reading? Because it was the motivation for filing the first litigation. Okay. The problem was there was a dispute about that price. Okay. So Cadrillion wanted to exercise its option. It only wanted to pay so much for it. It was not willing to exercise its option for $1.7 million. It was willing to exercise it for $460,000, and there was a big dispute about the parties. And so Cadrillion had to do something. Two choices. One, it could do nothing, not exercise the option, and LDA Georgia would remain entitled to the deferred purchase price when the business was sold in the future. The other option was to file this first litigation. And so that's what they did. And so they filed the litigation and asked for a declaratory judgment that they had exercised the option at a price no higher than $460,000 and that LDA Georgia had no further rights. The concern was, and the reason that they didn't pay the money directly to LDA Georgia. Which would be one way of exercising the option. Well, in retrospect, it would have been the only way. Well, in retrospect, notice alone was sufficient. But ultimately, Cadrillion came to agree with Your Honor. Because they tried to tender it with the court in order to show that they were ready, willing, and able to pay. LDA Georgia objected to that and said, wait a minute, you calculated the call price wrong, and you can't tender that payment to the court. You have to give it to us. And so the day after they filed the motion objecting to the attempt to deposit these funds with the court, LDA dismissed the case. And under L, excuse me, Cadrillion dismissed the case. And under Cadrillion's view, what that meant was not that LDA Georgia wouldn't be paid anything. What it meant was that they hadn't exercised their option. That's what you say now. I think this has been a moving target. I do. A raft of different. There's a lot here. I'll agree with that. But under Cadrillion's view, if you don't exercise the option, this case isn't about whether LDA Georgia would get money or not. This case is about timing. There was clearly a dispute about the amount of the call option. There was a dispute about whether the option was exercised. Well, since you've conceded that you breached the contract now and failed to pay the call price, aren't the damages what the call price was worth? I think the jury found that the damages were. Well, I didn't ask you that. I asked you what the damages would be if you conceded that. Because there's a big argument about contract damages here. So wouldn't you concede that that is? I would concede that damages were an amount sufficient to put the plaintiff in the position they would have been if not for the breach of the contract, and that's the way the jury was instructed. Okay. Am I not answering your question? No. You look aggravated with me. Because what you have here is this conflict between the contract damages and the conversion damages. And you want to do away with some of it, but you want to retain all of it. And you can make a perfectly good, you can sort of put this all together if you think that the jury thought, yes, indeed, there's some damages here and just gave them to you in conversion. You say, well, there is no conversion claim here. So all we're entitled to is the jury's award on the contract. But if we're going to reverse, don't we have to reverse the whole business? In my view. Not in your view as a litigant. In your view as a lawyer looking at this as a sensible human being. In my view as a somewhat sensible human being. I look at the Broussard case and the Strom case from this court. And I think that you cannot be, this is a case where conversion and punitive damage claims and abuse of process claims were brought for what is at its essence, a contract claim. I do understand that argument. What I'm asking you about is the damages. Because all you want to do is to get this lesser amount of jury award damages, doing away with all the other damages. That's fair. That's what I would like to do, Your Honor. Yeah, but why? I mean, the point is, it's a big ball of wood. It's a big mess. And how do you untangle it on appeal when one piece is fallen, when the pieces are in different postures? So you've got the $256,000, is it, compensatory damages? And then the $1.5 million for conversion damages. If conversion falls out, it doesn't even seem, it just doesn't make sense, intuitively, that the compensatory damages would be the same once the conversion damages fall. That's, I think, what, or at least what I'm trying to understand. All right. I mean, I know you like it. I got that part. But why that works, especially given what appears to me to be an incorrect instruction on whether or not conduct in or effect in commerce is a question of law and fact. So you've got all of these pieces. I understand that. And I guess my view is this. I'm really not asking for your view. I'm really asking you to explain to me what, and perhaps that's. I think that's just my way of speaking, Your Honor. My apologies. And I'm sorry, but your yellow light is going on, and we've never gotten to that. So I was trying to see if I could move us quickly along. And if you can do that, that would be great. And your question, if I understand it correctly, is we've got a big ball of a mess. Yes. And it appears to you that it wouldn't be fair to. Well, not just that it appears to me. You've conceded one piece of it that had a small amount of damages. You're arguing for the reversal of a much bigger piece of it. And we've got what seems to me, and you haven't argued to the contrary, is a questionable instruction by the district court on commerce. How can we unravel all of that in the first instance here out of a jury verdict that it was of a piece? Well, I believe that the plaintiffs created this problem by bringing a bunch of. It doesn't matter. For purposes of my question, it doesn't make the slightest difference. Let me go to inner effect in commerce. No. How do you. . . I'm not asking you to argue the components. Okay. I'm asking you to tell us how, when some of the components stand and some of them don't, how you parse it without starting from scratch. I think there are sufficient problems with the tort claims that they need to be dismissed. And quite frankly, I believe that the plaintiff got the jury instructions it wanted and requested. It got the evidence that it wanted. Not my question. I agree with you. If I agree with you about the conversions piece, your argument is that you just subtract that and that's all. That's it. Yes. Thank you. Good morning. May it please the Court, John Burek along with John Brickley and Mr. Odom for Legacy Georgia and Ms. Peters who is with us this morning. I think your question is spot on as to what we're here about. And I think that the problem with the defendant's case is that they have pled themselves out of the position that they tried to take the trial, which they're now again trying to do today. And I think one need look no further. Well, you have a problem in your case, too. And that is? You don't see that there are any problems in this case? Well, how about whether there is, in fact, a conversion claim here in this breach of contract? Yeah, I think that that issue has been decided by our courts in North Carolina, by the Court of Appeals in Bradley. And I think that if you look at the Courts Authority case, the progeny of cases that came after Courts Authority, every one of those cases – Why would the economic loss rule be limited to bailment cases? Because our courts said that they're not. The Court of Appeals in Bradley said specifically that the only time the economic loss rule bars a tort claim, when that tort claim is a companion or a parallel case to a breach of contract claim, is in the context of negligence. In fact, if you look at Lake Mary, if you look at Williamson, if you look at Estill, if you look at all of those cases, those cases allowed a conversion claim to run parallel with a breach of contract claim. And when liability and damage were found on both, they were sustained on both. They were affirmed on both. So I recognize that the Courts Authority case uses the word tort broadly. I don't dispute that it says that. But in every one of the Courts Authority cases and all the cases that have come since then that have dealt with the tort that accompanied the breach of contract, the only tort excluded was the negligence claim. And Bradley v. Woodcroft dealt with that. And it didn't just do it in dicta. It dealt with actually analyzing the economic loss rule. That economic loss rule was explained ad finitum in that case and explained why it didn't apply. Was there fear other than economic loss? Well, the loss was my client's right to the exit transaction deferred purchase price was extinguished upon the exercise of the call. Which is a breach of contract. It is a breach of contract. There's no question about this. Yes, ma'am. It is a breach of contract. I'm not suggesting that it's – What is there in addition to a breach of contract? Well, I think what happened here that makes it unique and not just a breach of contract is this. The defendants calculated a call price. Initially calculated it at $1.2 million, and then at $1.1 million, and then at $968,000, and then suppressed it to $460,000. That call price represented the proceeds of a hypothetical sale. That's what the contract called for, is we're going to go through a hypothetical sale. When you terminate your employment and we exercise our option, and we're going to calculate what the price of that is, and that call price is the result of a hypothetical sale and their proceeds related to that sale. We wouldn't be even asking this question if LDA Legacy Data LLC of North Carolina would have actually sold this business to somebody and realized, let's say, $15 million worth of proceeds and not paid that down. That would be akin to the Williamson case, where you had a party that was contracted to sell another piece of property for somebody and then split the proceeds, and that was the subject matter of the contract. Lake Mary, subject matter of the contract was to turn over these checks. And our court of appeals in North Carolina said, if you engage in the conduct that is the very essence of what is your contractual obligation, you can still be liable for a conversion. Can you just – I understand the cases you're talking about. Well, I don't understand them, I guess. What kind of a breach of contract claim would not also be a conversion claim on that theory that the subject matter of the contract was the money that you owe? That's a limiting principle. How does not every breach of contract claim become a conversion claim? Right. And I agree with Mr. Hardiman's hypothetical that if Mr. Hardiman had an obligation to pay a mortgage and didn't pay it, it would be nothing more than a breach of contract. But in this instance, we don't have that. We don't have somebody who's just not making a payment. We have someone who is making a sale, and under the asset purchase agreement, is required to turn those funds over to somebody, and instead of doing that, is taking those funds and trying to give them to the clerk who works for the Western District of North Carolina. So the person who owes the money on the mortgage, instead of paying the bank, takes the money and gives it to his daughter. Like, is that a conversion claim? No. Well, why not? How is that different from this? Because in this instance, those funds are the result of a sale. Those monies are coming in, and the parties had agreed at the front end that when those funds come in, just like in Lake Mary, if you analyze the Lake Mary case, you had the Johnstons who sold the shopping center to Equity, who then assigned the rights to Lake Mary, and under the contract obligation, the Johnstons were required to take any rent checks that came in subsequent to the closing of that transaction and provide those rent checks to Lake Mary. That was their contractual obligation, was to turn those checks over. And when they didn't do that, we know this case because our firm represented the Johnstons, and we argued the economic loss rule and lost. And we said, well, it's just a subject matter of a contract. And the court said, no, it isn't. It is a subject matter of a contract. Don't disagree with that. It gives rise to a breach of contract, but it also gives rise to conversion. Because in that instance, the party was obligated to turn those checks over pursuant to the contract and took those checks and deposited them somewhere else. And why did they do that? They did that in Lake Mary because they were concerned that the buyer was going to engage in some conduct that might in the future be a breach of contract. That's precisely what Legacy Data, North Carolina, and Cadrillion did here. They said, we're afraid this may not be the right amount that you think it is, and you may have claims against us. We don't want you to have the money. All of the parties admitted in the underlying trial of this case and in the depositions that the purpose of the asset purchase agreement was to allow Ms. Peters to grow the business and realize the proceeds and the value of the business increase as a result of the sweat of her brow. And that's why it's different than just we're not making a mortgage payment and I'm giving the money to my daughter or to whoever you suggested it might be given to. This is money that Ms. Peters is entitled to because it was her business that she sold, and this was the way they arranged the payment to be made. And once that sale occurs. Is this connected to when the district court talks about how the money had already vested? Yes. That's what we're talking about? Yeah. The way I think the court. Yeah, I think the way the court analyzed this was once they exercised the option, which if you look at the record, it's pages 41, 23, give or take around that area, it is a copy of the pleading that Kedroian filed. Interestingly, against both Ms. Peters and LDA Georgia, which I think affects the standing issue we might get to in a moment. But in that instance, what the court looked at when they moved to keep those pleadings excluded, said you made admissions in those pleadings about what you did. And in the complaint that they filed with the same court, Judge Whitney was the trial judge for the initial litigation, said in that complaint, we exercised the option, and it obligated us to make a payment on the expiration, which was 30 days after the option period, which would have been February 18 or 19. And instead of making the payment, what we want to do is we want to deposit the money with the court. We want to extinguish Ms. Peters' contract claim to the money. And here's the interesting part. We're depositing it to the court for the benefit of LDA. They said that two or three times in their pleading, that they're taking LDA's money, Georgia, and they're giving it to the clerk of court for the benefit of LDA. And so when we filed our moving papers in opposition to that motion, we said, no, you don't do that. You've got to give the money to us. Whatever isn't in dispute. That's in the record. Letter from me. Whatever's not in dispute. If it's $460,000, if it's $4.60, pay it to us. And they agreed. They said that's the right approach. We can't do that. They dismissed their lawsuit. But what they didn't then do is take the money that they were attempting to convert from us and give it to us. And had they done that, there may not have been a conversion. So I don't think this is at all like someone who has a note obligation, whether it's to a mortgage company or to a friend or to a business that they don't pay, and they just fail to pay. When my clients don't pay me my invoices and they have a contract to pay me, that's not a conversion. But when I agree that I'm going to engage in a hypothetical sale of someone else's business, like in Williamson, or I agree that I'm going to turn over checks, like in Lake Mary, or if I agree that I'm not going to sell a crane, like in a steel, and I do those things, all of those were the subject matter of the contract, and the courts found parallel conversion claims. Let me address very quickly, if I can, because I've only got about four minutes, the contract issue. And, Judge Duncan, I want to follow on a couple of questions that you asked Mr. Hardiman. When the jury was asked to calculate the damages for the breach of contract claim, the only element of damages that were available was the call price. That was it. And when the jury answered the question on the conversion claim, what are the damages, the question was, did defendants convert the call price? It was specifically the call price. That's what was asked. There were various calculations of the call price, Judge Motz, as you had recognized a moment ago. There was initial calculations by the defendants through their CPA, and there were calculations by Dr. or Mr. Noble, who was our expert witness. Mr. Noble's calculation of the call price was $1,676,000 and some change. There was a loan that was due. Kedrillian took that loan, and according to the asset purchase agreement, was entitled to take that loan only when they paid the call price. Okay? So by keeping the loan, they have acknowledged that they have an obligation to pay the call price. Now, of course, this is all consistent with their initial pleadings, which is inconsistent with the position they took at trial, which is now inconsistent with the position they're taking here. But their initial position was, we have to pay the call price, and we're paying it to the court. And they netted out the loan. So when the jury made the calculation for what the call price was, it wrote it out. It said the call price that hadn't been paid under the conversion claim is $1,676,435 minus loan, $176,436. That's found on page 4531 of the joint appendix. For a total of $1,499,999. Now, I'm pleased to announce that that is the precise call price that my expert calculated, to the penny. So if we go back now to the damage claim on the contract issue, to put Ms. Peters and the Legacy Georgia in the position they would have been in had there not been a breach, and the breach was to not pay the call price, you need to pay the call price. And the problem we have, as you've analyzed, Judge Junkin, is that we have two different analyses of what the call price is. And one need look no further than the first couple of questions that the jury came back with to understand why we have this problem. The jury came back at one point and asked a question along these lines. It's in the record, but something about when we're analyzing this, do we add them together? And I suggested an answer that the judge did not agree with. The judge gave an answer of, just answer the questions. I wanted him to say, answer the questions and I'll take care of what is the perceived double dipping. I recognize, as an attorney, that when you have parallel claims, whether they be a tort and a contract claim, whether they be a statutory Chapter 75 and a contract claim, that when that happens, you have an election of remedies at the end. Fully get that. And I knew that the jury was going to be concerned. Well, what if I say the breach of contract claim is $1,676,000 less the loan for $1,499,000? And I say that the conversion claim is $1,676,000 less the loan for $1,499,000. This lady's going to get $3 million, which is only entitled to $1.5 million. And that's why I wanted the instruction, or the response, excuse me, to the question to be a little bit nuanced. But I think that precisely hits on the issue that you were raising a moment ago, was we have a ball here. And I think what the jury was doing, you can never tell. I actually know because I spoke to them, but that's not on the record. But you have this problem where they're calculating a call price for two different claims and coming up with two different numbers. And I think that we've preserved that issue. We asked that the judge submit that issue to the jury. The judge didn't. I see that my time is up. May I continue this line? Sure. I recognize that the judge heard my motion. He suggested that I modify my motion and ask something a little bit different. That he said, I'm not going to do that, so you reconsider making a motion. My personal belief is that I'm not obligated to make the motion that the court wants me to make. The question for you all is that I preserve it. I don't think we need to really get into it because the record doesn't actually state, or the defendant's briefs don't actually state what happened.  As long as you can talk over time, maybe you can answer my question. Yes. And the question is, if your client, your opponent, had not violated the contract, what conversion claim would there be? If the contract had not been breached, I would probably have to concede that there wouldn't be one. But I don't think, though, that, again, I'm not suggesting that we don't have conduct that gives rise to both a conversion claim and a breach. I understand what your position is. Thank you. Thank you. I want to hit on the contract claim. The plaintiff's motion to have a new trial of the contract claim. Why I don't think that's fair, and hopefully that ties into what you're looking for, Judge Duncan. Part of the problem with the contract claim is the plaintiff had the chance to fix this blow because the trial, the liability phase ended, we went to the punitive damages phase, and plaintiffs moved before the punitive damages phase. Hey, I think we've got an inconsistency here. The conversion damages are $1.5 million. The contract damages are $250. We want to send back the contract damages because we think they're wrong. The record's a little messed up. I think if you look at what Judge Whitney offered plaintiffs, what he said was, he said, I'm going to send back both sides of the inconsistency. And there is an argument in plaintiff's brief that what he was doing is saying, I'm going to send back liability and damages. And unfortunately, I think either the transcript's messed up or he got confused with the number of issues. But I think if you read that as a whole, it will support my position that what he was doing was he was saying, I'm not going to send back just breach of contract damages. If you want to resolve this, you need to send them both back. And I think that that's why Judge Whitney found that they didn't preserve this issue for appeal because he gave them the opportunity to do that and they declined to do so. I also think that to the extent there are problems, plaintiffs invited this error. Plaintiffs insisted that the jury here be instructed with respect to breach of contract and with respect to conversion with regard to the same call price. The judge found that plaintiffs had invited this error, and I can certainly understand why it would be confusing. But in fact, these were plaintiff's instructions that the plaintiff proposed, the defendants objected to, defendants felt that it might be confusing. I don't know what you're referring to. I really don't. I apologize. What specifically is the invited error and how does this relate to where we are now in terms of trying to determine how to unravel what has been put together? I'm just not quite sure how that's what you're saying is responsive to at least my question. First off, the invited error is the requesting that the jury be instructed on breach of contract and conversion with regard to the same call price. That's the invited error, and Judge Whitney found that. I'm sorry, what error does it invite? I'm so confused. What error was invited by that? He invited, plaintiffs invited this alleged inconsistency. This is what I'm not understanding. How do you invite an inconsistency by insisting that the jury be instructed the same way as to both claims? I'm just missing what you're saying. It is a confusing instruction and, quite frankly, not consistent with the law because if it's the same call price, then you can't bring a conversion claim in addition to a breach of contract claim. As far as how this relates to Judge Duncan's issue, at the beginning of this, what Pedrillian wanted to do was exercise this option for a price. It has now gone through a two- But we're not at the beginning. I'm not finding it helpful to go back in response to the changes that have occurred in your position, for example, since you are now no longer arguing breach of contract. In the context of where we are now, how do you support wanting to simply extract the piece you don't buy and not touch anything else when there appear to be other problems? And if I am understanding your statements correctly, you're acknowledging that there's some inconsistency. I'm saying that the jury's verdict was within the range of credited testimony because there was testimony that the value of the business had declined since Pedrillian acquired it. And that that, I think it's the Strom case, or the Strom case, I don't remember. It's cited in our briefs. But just because the damage figure is not plaintiff's theory or defendant's theory, if it's within the range of credited testimony, that's not grounds for giving a new trial. And I think, and Judge Whitney found, that the jury's verdict here was within reason. And I don't believe that he abused his discretion in that regard. My point with regard to your earlier question is that we've had our fun. We've had some cases. We've got the jury was instructed as plaintiffs requested. They got in the evidence they requested. There's a final verdict. And to some extent, I believe that Pedrillian is being punished because plaintiffs attempted to turn what is a contract case into a tort case and presented evidence before a jury that should never have been presented. And Pedrillian's paying the price for that. At some point, finality is needed. And quite frankly, you don't think it's this case because you're here on appeal. I mean, I've heard a lot of arguments for you to make. Plaintiffs didn't preserve the issue on reversing the contract claim. We're not arguing. Nobody's arguing the breach of contract. That's not for us. Is it? It is. You've conceded you breached the contract. Well, that's right, but the plaintiffs want a new trial on the breach of contract. They want a new trial on damages. Excuse me, a new trial on damages for breach of contract. And I'm saying that they invited error, they didn't preserve the issue, and it was within the range of reason. You don't want them to get a new trial on damages for breach of contract, but you think we should vacate the damages that were given on conversion because there is no conversion claim. Yes, that is correct. I've had all the fun I can stand. Okay. Thank you. I appreciate your time. Thank you. I had reserved seven minutes, but if it's improper, I won't take it. Okay. So you're dealing with only with your response to his response to the cross-appeal? Correct. Unless the court has a question on any of the other topics that we haven't discussed about abuse of process or anything else, I won't go into that, but we'll rely on our argument in the brief. But the notion that somehow or another we have invited error by asking the jury to, in both instances, calculate a call price, where they in one instance came up with a call price that's not consistent with any of the testimony and any of the calculations, and the other instance came out precisely consistent with the testimony and precisely consistent with the calculations of the call price, doesn't seem to me to be some error that we have invited. In fact, if you go back through. It says, putting aside the invited error, what about the sort of waiver argument that, well, you had a chance to send it back and tell the jury to come up with the same number both times and you decided not to do that? I asked my colleagues, while Mr. Hardiman was arguing, to actually get the pages of the transcripts so that I can refer you to them. And if you begin looking on pages of the Joint Appendix 4584, it's where I began and where I made the motion to send back issue only 1A. 1 was the liability for breach of contract. 1A was the damages. And I requested that that go back only. And the judge, along with Mr. Hardiman, made the comment, well, you can't just send back 1 if they're inconsistent. Don't they both need to go back? And Judge Whitney actually said, I'm going to send back 1 in 1A and 2, which was the liability for conversion, and 2D, which was the damage issue for the conversion claim. And he said, because I think it's all got to go back. And he said, so that's going to be my ruling. So you read him as saying, I will send back everything, breach, liability, the whole thing. Without question. If you look at exactly what he said, he said, I am going to send back 1 in 1A and 2 in 2D, liability. And we didn't argue any inconsistency in liability. And as I mentioned a moment ago, I don't think that I'm required to make a motion consistent with what the court wants. I may waive something. If I don't, I get this. But I think I'm allowed to stand on my motion. And what he said was, I want you to reconsider because that's what I'm going to do. He immediately brought the jury in for the punitive phase of the trial. Remember, we had the initial compensatory phase in May. Jury came back. We were missing a juror. We then commenced the punitive phase in October. So it was in October that I made this request. Can I just ask you, if the judge had said clearly, look, I'm not going to send back contract damages without also sending back conversion damages, what would you have said to that? I would not have wanted to do that in all candor. Okay. Why not? Because we had a good verdict on the conversion claim. And I thought it was a good amount. And it's not just that it was a good amount. It was consistent with the evidence. That verdict was precisely what an expert calculated to be the call price. So what you were arguing is, I actually do want to make sure I understand this, was not necessarily that the two numbers have to be exactly the same, but that this contract number comes out of nowhere. Precisely. And, again, not even did the defendants calculate the $256,500. I believe that the record suggests there was a comment that what the jury did was take the initial deposit money and divide it in half so they got two-thirds on the front end and one-third on the back end. So I'm sorry. So your argument, your objection would have been satisfied if the jury had come back with this nice high number on conversion and a lower number on contract that at least matched up with someone's valuation of the call price? In candor, Your Honor, the other way. We argued to the jury, and, again, it's not evidence used to argument, but we argued to the jury that the call price was $1,676,000, less the note for $1,499,000. And when I did my closing, I had the jury verdict form, and I said that's the number that you put there in 1A. And when we got to the conversion claim, and this is part of what Judge Whitney analyzed when he gave his final judgment, he said, well, even you, Mr. Burek, argued to the jury that the conversion claim should be $464,006. And the reason for that was because we struggled with this notion of how do you have readily identifiable funds? The conversion claim required readily identifiable funds. And that $464,006 were segregated readily identifiable funds and precisely matched what Mr. Juhasz calculated to be the call price. So we said that's readily identifiable funds. I do believe that the jury could have come back on the conversion claim at $1,499,999 because there was evidence that that was the call price. But to answer your question directly, I think that the numbers don't need to be the same, but I think in all instances the contract claim needs to be higher than the conversion claim. I do think that there is a rationale for concluding that you breached the contract and you didn't pay the $1,500,000. I'm rounding up by a penny. You didn't pay the $1,500,000, but you only converted the $464,006 because that's all that's readily identifiable. I think that's possible for the jury to come out that way. You can't flip it. You can't come out $256,000. Zero evidence to support that. There's just none. And certainly it wouldn't put the party in the place to make them whole had the breach not occurred because what they paid them was the one-third amount of the money on the date that they closed the deal, which doesn't give her the benefit, Ms. Peters the benefit of any of the growth from the sweat of her brow, and it deducts this loan. And you hear me hammering that, but the deduction of this loan establishes that they've taken the benefit of this asset purchase agreement and paid themselves back the money and then tried to deposit LDA's money with the clerk of court for who? For the benefit of LDA. You need look no further than to see what their objective was. They didn't want us to have the money, so we had to work just to litigate with them to get the actual call price, which was roughly $1,000,001 more than this of the $464,006. And so that's the crux of the problem, and I do think that we've preserved it. When Judge Whitney came back and he said on page 4789, he had asked me to renew the motion, which I'm just going to be honest with you, I wasn't going to do. I was not going to renew the motion he wanted. I would have renewed my motion and just said 1A to go back, and he could have just denied it, which is what he kind of tacitly said he was going to do anyway, but I wasn't going to make the motion to send 1 and 1A and 2 and 2D. I'm just telling you I was not going to do that. But we didn't need to get there, because when the jury was retiring to deliberate on the punitive phase, and what happened was we had this colloquy about this motion. We went through the punitive phase. The judge comes back. Ladies and gentlemen, one final instruction, because this case is not over, and he goes through this, and then he says, do you all understand? Yes. Okay, with that said, we'd like you to retire to deliberate. The jury leaves the courtroom, the court. So as to the issue about the inconsistent verdict, one, the court says, please take your seats. The court is not convinced that it's an inconsistent verdict, so we deny the motion. So the notion that I didn't somehow preserve, and I see that my time is up, may I have just one more second? The notion that I didn't somehow preserve the objection, I believe that we did. I believe that the judge ruled on my motion. I didn't agree with his ruling on it. But we've got this ball, as you refer to it, Judge Duncan, and what the defendant wants is to jettison what the jury really calculated to be the call price that's attenuated to the breach that they've declared, which they've not appealed. And the call price is the call price. There's only one calculation. Thank you. Thank you very much. Okay, we will come down and greet the lawyers and then go to our last case.
judges: Diana Gribbon Motz, Allyson K. Duncan, Pamela A. Harris